MICHAEL K. ERICKSON (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, #1400
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543

*Attorneys for Plaintiff Utah State University*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UTAH STATE UNIVERSITY, a public body of the State of Utah,<br><br>Plaintiff,<br><br>vs.<br><br>AVEPOINT, INC., a New Jersey corporation,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Utah State University ("Plaintiff" or "USU"), files this Complaint against Defendant AvePoint, Inc. ("Defendant" or "AvePoint").  USU's Center for Persons with Disabilities has been improving the lives of people with disabilities and their families for forty years.  To make websites more accessible for persons with disabilities, USU developed groundbreaking tools to evaluate and improve the accessibility of websites.  Regrettably, AvePoint has misappropriated USU's groundbreaking tools for commercial gain.  To stop AvePoint's unlawful conduct, USU seeks monetary and injunctive relief for copyright infringement, trade dress infringement, breach of contract, and misappropriation of trade secrets.

## PARTIES

1. Plaintiff Utah State University is a public body of the State of Utah with an address at 1780 North Research Park Way, Suite 108; North Logan, UT 84341.

2. On information and belief, Defendant AvePoint is a New Jersey corporation with its principal place of business located at 3 Second St.; Jersey City, NJ 07302.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. As stated above, USU is a public body of the State of Utah with an address in Utah, and AvePoint is not incorporated in Utah and has no principal place of business in Utah. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Furthermore, this Court has original subject matter jurisdiction over USU's copyright and trade dress claims under 28 U.S.C. §§ 1331, 1338(a), and supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within the State of Utah. Furthermore, pursuant to 28 U.S.C. § 1391(c), AvePoint is subject to personal jurisdiction in Utah and is, therefore, deemed to reside within this district for purposes of venue.

5. This Court has personal jurisdiction over AvePoint because AvePoint has transacted business in this district and/or because AvePoint has caused injury in this district. Specifically, AvePoint and/or its agents knowingly and willfully copied and otherwise misappropriated USU's intellectual property while repeatedly browsing USU's websites from May to September 2013. AvePoint knew or should have known that USU resided in Utah and

that AvePoint's unlawful activities were causing injury in Utah. AvePoint has further transacted business and/or caused injury in Utah because, on information and belief, it has sold, offered to sell, transferred, and/or distributed its Compliance Detector and Compliance Guardian products in Utah. AvePoint's unlawful conduct has also caused injury in this district because USU is a Utah resident.

## FACTUAL BACKGROUND

### WAVE – Web Accessibility Evaluation Tool

6. WAVE is a web accessibility evaluation tool. WAVE allows users to enter a webpage address, such as google.com, and then receive information about that webpage's accessibility for users with disabilities. An example screenshot of WAVE evaluating Google's familiar homepage is shown below.



7. WAVE displays its evaluations utilizing three window panes. The large top-right pane displays Google's homepage with error and information indicators in line with the webpage text and graphics. The bottom-right pane shows the HTML code for this webpage, and the left-hand window provides details about the page's accessibility.

8. A prominent feature of WAVE is its use of error and information indicators in line with the text and graphics of the webpage. These inline indicators alert users to specific information about a webpage's accessibility. Each indicator is a graphically descriptive icon that is placed adjacent to a particular webpage feature. For example, in the screenshot above, WAVE has embedded an icon next to the central search bar on Google's homepage. This icon is a red square with the image of a tag or label and a diagonal line from bottom-left to top-right. The same icon appears in the left-hand pane showing the details about the page's accessibility. This particular icon informs the user that there is a "Missing form label." Because the central search bar is not labeled with a description, WAVE has identified this as an error that makes the page inaccessible to users with disabilities. When the icon is selected, WAVE gives the user additional documentation explaining what it means, why it matters, and how to fix it.

9. Each icon in the left-hand pane corresponds to an accessibility error, alert, or other information that WAVE identified for the tested webpage, and a corresponding icon appears in line in the webpage displayed in the large top-right pane. (In the screenshot above, some icons are not visible because the entire webpage is not shown, as seen by the scrollbar on the rightmost side.) Thus, there is a distinctive one-to-one correspondence between the icons in the left-hand pane and those placed in line in the webpage displayed in the top-right pane.

10.     USU's Center for Persons with Disabilities developed WAVE over a period of at least fourteen (14) years.

11.     USU's WAVE is the subject of the following copyright registration: "WAVE – Web Accessibility Evaluation Tool," Copyright Registration No. TXu 1-915296 (2014). A true and correct copy of USU's copyright registration is attached hereto as Exhibit A.

12.     USU offers an online version of WAVE at wave.webaim.org (the "WAVE Portal"). Online users agree to WAVE's "Terms of Use" available at wave.webaim.org/about. Users are only authorized to use WAVE "to help [] determine the accessibility of web content," and expressly agree "not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble, or otherwise attempt to derive source code from WAVE."

13.     Because the WAVE Portal is available online some of the WAVE source code is available over the Internet (the "Frontend Code"). The Frontend Code comprises JavaScript, PHP, JSON, and CSS files that can be browsed and accessed over the Internet. The Frontend Code provides the graphical user interface that allows users to review and analyze WAVE's webpage evaluations. Additional WAVE source code is not available over the Internet (the "Backend Code"). The Backend Code comprises JavaScript and PHP files that provide the logic rules for creating WAVE's webpage evaluations.

14.     Since 2001, WAVE has been used to evaluate the accessibility of millions of web pages.  Over more than a decade, diverse users have come to recognize WAVE's distinctive interface, including, for example, WAVE's use of: (1) three window panes for displaying the webpage (top-right), the HTML code (bottom-right), and accessibility details (left); (2) graphically descriptive icons placed inline and adjacent to webpage features to alert users to

accessibility information; (3) one-to-one correspondence between icons appearing in the left pane showing accessibility details and the top-right pane showing the webpage; (4) distinctive icons for communicating accessibility-relevant information; (5) styles / no styles view; (6) filtering; (7) side-bar interaction; and (8) code view.

**AvePoint's Infringement**

15.     Jared Smith, the Lead Programmer at USU's Center for Persons with Disabilities, presented WAVE at the International Technology and Persons with Disabilities Conference on February 28, 2013 (the "Conference"). On information and belief, Robert Yonaitis, the Chief Research Scientist and Senior Vice President of Engineering for AvePoint at that time, also attended the Conference and was introduced to WAVE's features and functionality.

16.     Shortly after the Conference, from May 14, 2013 to April 30, 2014, AvePoint and its agents accessed the WAVE Portal approximately seven hundred (700) times from AvePoint IP addresses. AvePoint and its agents used WAVE to evaluate AvePoint.com, yonaitis.com (Mr. Yonaitis' personal webpage), and ryonaitis.wordpress.com (Mr. Yonaitis' personal blog). But each time the WAVE Portal was accessed, it produced the same or very similar evaluation results, indicating that AvePoint and its agents were not using WAVE to adapt and modify their websites in order to improve accessibility, but rather to copy, misappropriate, and/or reverse engineer USU's intellectual property without authorization.

17.     During this time, or shortly thereafter, AvePoint launched the website www.compliancedetector.com, an online software portal ("Compliance Detector"), and also released a version of Compliance Guardian, a business software suite ("Compliance Guardian"),

both of which incorporate, without authorization, USU's intellectual property in WAVE (collectively "AvePoint's Infringing Products").

18. According to AvePoint, one of Compliance Guardian's features evaluates website accessibility by rendering HTML web pages "with error and informational indicators in line with the content" of each webpage (*See* "Compliance Guardian 3: User Guide," Figure 15):



19. During the same time AvePoint and its agents were repeatedly accessing the WAVE Portal, Mr. Yonaitis claims on his personal LinkedIn website to have "conceived, designed, and led the development and market introduction to Avepoint's first compliance platform from inception to industry analyst recognition."

20.     Mr. Yonaitis also indicates that Avepoint's Compliance Guardian received numerous industry accolades "and also helped AvePoint achieve a $90M USD round of funding from Goldman Sachs as a new contender in the compliance and data loss prevention space."

21.     AvePoint's Infringing Products infringe USU's copyrights to WAVE. AvePoint accessed the WAVE Portal hundreds of times over several months and copied WAVE in the process of developing, creating, producing, selling, transferring, and/or distributing AvePoint's Infringing Products.  As such, AvePoint's Infringing Products incorporate unauthorized copies (reproductions and/or derivatives) of WAVE.  On information and belief, AvePoint's infringing activities included making literal copies of WAVE's Frontend Code by browsing the WAVE Portal and copying the JavaScript, PHP, JSON, and CSS files available over the Internet. Highlighted below are examples of identical code found in both WAVE's and AvePoint's code.

**WAVE tabs.js**

```javascript
var pagedoc = $('#report').contents();

if (mode=="styles" || mode=="contrast") {
    $('.hide_off').attr('title','This icon or the element it applies to is visually hidden in your page. Select "No Styles" to view it.').addClass('hide').removeClass('hide_off');
    // Unlinearize tables
    $("table, tbody, td, tfoot, th, thead, tr", pagedoc).css({'display':'', 'text-align':''});

    $('style', pagedoc).prop("disabled",false);

    $('link[rel="stylesheet"]', pagedoc).each(
        function(){
            $(this).prop("disabled",false);
        });
    $('[wave5style]', pagedoc).each(
        function(){
            $(this).attr({"style": $(this).attr('wave5style')});
            $(this).removeAttr('wave5style'); });
}
else if (mode=="nostyles"){
    $('.hide').attr('title','').addClass('hide_off').removeClass('hide');
    $('style', pagedoc).prop("disabled",true);

    $('link[rel="stylesheet"]', pagedoc).each(
        function(){
            $(this).prop("disabled",true);
        });

    $('[style]', pagedoc).not(".wave5icon, .wave5text, .wave5text a").each(
        function(){
            $(this).attr({"wave5style": $(this).attr('style')});
            $(this).removeAttr('style');
        });

    // Linearize tables
    $("table, tbody, td, tfoot, th, thead, tr", pagedoc).css({'display':'block', 'text- align':'left'});
}
```

```
AvePoint ModeTab.js

var pagedoc = option.$afterTagVessel;
    if (id == "style_div") {
        $("#styleDiv").addClass("hasStyle");
        $("#noStyleDiv").removeClass("hasStyle");
        $("#noStyleDiv").addClass("noStyle");
        $("#styleDiv").removeClass("noStyle");

        $('.hide_off').attr('title', 'This icon or the element it applies to is visually hidden in your page.
Select "No Styles" to view it.').addClass('hide').removeClass('hide_off');
        // Unlinearize tables
        $("table, tbody, td, tfoot, th, thead, tr", pagedoc).css({ 'display': '', 'text-align': '' });

        $('style', pagedoc).prop("disabled", false);

        $('link[rel="stylesheet"]', pagedoc).each(
            function() {
                $(this).prop("disabled", false);
            });
        $('[ave4style]', pagedoc).each(
            function() {
                $(this).attr({ "style": $(this).attr('ave4style') );});
                $(this).removeAttr('ave4style');
            });
    } else if (id == "no_style_div") {
        $("#noStyleDiv").addClass("hasStyle");
        $("#styleDiv").removeClass("hasStyle");
        $("#styleDiv").addClass("noStyle");
        $("#noStyleDiv").removeClass("noStyle");

        $('.hide').attr('title', '').addClass('hide_off').removeClass('hide');
        $('style', pagedoc).prop("disabled", true);

        $('link[rel="stylesheet"]', pagedoc).each(
            function() {
                $(this).prop("disabled", true);
            });
        $('[style]', pagedoc).not(".ave4icon, .ave4icon img").each(
            function() {
                $(this).attr({ "ave4style": $(this).attr('style') });
                $(this).removeAttr('style');
            });

        // Linearize tables
        $("table, tbody, td, tfoot, th, thead, tr", pagedoc).css({ 'display': 'block', 'text- align': 'left' });
    }
```

22.  In addition to the identical code, there is additional evidence of literal copying. On information and belief, the $('.hide_off') and $('.hide') class elements referenced in both codes are only functional in WAVE because AvePoint copied these elements from WAVE, but did not actually utilize them in the Infringing Products. As further evidence of literal copying, both codes use the phrase "Unlinearize tables," which, on information and belief, is a descriptor unique to WAVE.

23.  AvePoint's Infringing Products also misappropriate USU's trade secrets in WAVE. On information and belief, AvePoint obtained USU's trade secrets by the unlawful

9

means of reverse engineering WAVE's Backend Code, in violation of the Terms of Use, to obtain USU's logic rules for creating WAVE's web-page evaluations. AvePoint is using and disclosing USU's trade secrets by incorporating them into AvePoint's Infringing Products.

24.     AvePoint's Infringing Products also infringe USU's trade dress in WAVE, including, for example, its distinctive use of: (1) three window panes for displaying the webpage (top-right), the HTML code (bottom-right), and accessibility details (left); (2) graphically descriptive icons placed inline and adjacent to webpage features to alert users to accessibility information; (3) one-to-one correspondence between icons appearing in the left pane showing accessibility details and the top-right pane showing the webpage; (4) distinctive icons for communicating accessibility-relevant information; (5) styles / no styles view; (6) filtering; (7) side-bar interaction; and (8) code view.

25.     AvePoint's Compliance Detector website includes the same "About/Terms of Use" link found on the WAVE Portal. While the terms are common as separate links for homepages, they are not often combined together. The resulting page on Compliance Detector includes information only for "Terms of Use," but not an "About" section. On information and belief, AvePoint copied the "Terms of Use" from the WAVE Portal for the "Terms of Use" on Compliance Detector, including, for example, the following identical highlighted text:

**WAVE**

You may use the WAVE Accessibility Tool online web service or browser extensions to help you determine the accessibility of web content. You must first obtain WebAIM's permission if you want to sell WAVE reports or data (e.g. number of WAVE errors, error listings, etc.) derived directly from WAVE, or if you want to modify, copy, license, or create derivative works from WAVE. Furthermore, you may not use WAVE in any manner that could damage, disable, overburden, or impair WAVE reporting services. In other words, excluding API usage, you may not use WAVE in an automated manner or author web spiders or bots that will send URLs or code to WAVE for processing, or automatically save WAVE reports without permission. Additionally, inappropriate content may be flagged and blacklisted from WAVE. WAVE use is closely monitored and abuse will result in permanent IP or content blocking.

This service is being provided "as is", without any express or implied warranty. In particular, WebAIM makes no representation or warranty of any kind concerning the reliability, quality, or merchantability of this service or its fitness for any particular purpose. Additionally, WebAIM does not guarantee that use of this service will ensure the accessibility of your web content or that your web content will comply with any specific web accessibility standard or law. You understand and agree that you download and/or use the WAVE service and/or browser extensions at your own discretion and risk and that you will be solely responsible for any damages to your computer system or loss of data that results from the download or use of WAVE.

You acknowledge that WebAIM or third parties own all right, title, and interest in and to the WAVE service and browser extensions, portions thereof, or software provided through or in conjunction with WAVE, including without limitation all Intellectual Property Rights. You agree not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble, or otherwise attempt to derive source code from WAVE.

**AvePoint**

You may use the Compliance Detector online web service to help you determine: (i) the accessibility of target web content; (ii) the level of compliance of the target web content with various user-selected privacy regulations; and (iii) overall target web site quality from a general compliance perspective. You may not use Compliance Detector in an automated manner or author web spiders or bots that will send URLs to Compliance Detector for processing. AvePoint, Inc. ("AvePoint") reserves the right to limit your usage of Compliance Detector in AvePoint's sole discretion and AvePoint may change Compliance Detector usage restrictions without notice. Compliance Detector use is closely monitored and abuse will result in permanent domain or content blocking.

The Compliance Detector web service is provided "as is", without any express or implied warranty. In particular, AvePoint makes no representations or warranties of any kind concerning the reliability, quality, or merchantability of this service or its fitness for any particular purpose. Additionally, AvePoint does not guarantee that use of this service will ensure the accessibility, privacy compliance or site quality of your target web content or that your target web content will comply with any specific web accessibility, privacy or quality standard or law. You understand and agree that you use the Compliance Detector service at your own discretion and risk and that you will be solely responsible for any damages to your computer system or loss of data that results from the use of Compliance Detector. Compliance Detector is being provided to you solely on an educational basis and may not be put to commercial use or otherwise exploited for commercial gain.

You acknowledge that AvePoint owns all right, title, and interest in and to the Compliance Detector web service, portions thereof, and any related software thereto, including without limitation all intellectual property rights. You agree not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble, or otherwise attempt to derive source code from Compliance Detector.

26.     The "Privacy" page on Compliance Detector also includes, without limitation, the following identical text to the "Privacy Notice" on the WAVE Portal:

**WAVE**

By submitting a URL, file, or code to the WAVE server, you agree that content, media, and information contained within the submitted resources may be displayed within the WAVE report shown on the WAVE web site. You may request to have your domain blocked from WAVE access. WebAIM is not liable for content, media, or information presented within WAVE reports. WAVE may not be used to share, present, or disseminate offensive or illegal materials, or used as a proxy for viewing information anonymously.

**AvePoint**

By submitting a URL to the Compliance Detector web service, you agree that content, media, and information contained within the submitted URL may be displayed within the Compliance Detector report shown on the Compliance Detector web site. You may request to have your domain blocked from Compliance Detector access. AvePoint is not liable for content, media, or information presented within Compliance Detector reports. Compliance Detector may not be used to share, present, or disseminate offensive or illegal materials, or used as a proxy for viewing information anonymously.

27. Accordingly, USU brings claims against AvePoint for copyright infringement, misappropriation of trade secrets, trade dress infringement, and breach of contract.

## COUNT 1
### Copyright Infringement—17 U.S.C. § 501 et seq.
### (All Defendants)

28. USU repeats and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth herein.

29. USU owns all right, title, and interest to WAVE, a copyrighted work registered with the United States Copyright Office.

30. AvePoint had access to WAVE, including without limitation when AvePoint and/or its agents visited and otherwise accessed the WAVE Portal, at least, from May to September 2013.

31. In the process of developing, creating, producing, selling, transferring, and/or distributing its products and services—including without limitation Compliance Detector and Compliance Guardian—AvePoint copied WAVE.

32. AvePoint's products and services—including without limitation Compliance Detector and Compliance Guardian—incorporate unauthorized copies (reproductions and/or derivatives) of WAVE.

33. At a minimum, AvePoint acted with willful blindness to and in reckless disregard of USU's copyrights.

34. As a result of this wrongful conduct, AvePoint is liable to USU for copyright infringement under 17 U.S.C. § 501.

35. USU has suffered damages, and is therefore entitled to recover its lost profits and/or the reasonable royalty or licensing fees that USU would have been paid for AvePoint's use of WAVE. *See* 17 U.S.C. § 504. In addition, USU is entitled to any and all profits AvePoint has made as a result of its wrongful conduct. *See id.*

36. USU is also entitled to injunctive relief pursuant to 17 U.S.C. § 502, and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. USU has no adequate remedy at law for AvePoint's wrongful conduct and is entitled to injunctive relief because, among other things, (a) USU's copyrights are unique and valuable property, (b) AvePoint's infringement harms USU such that USU could not be made whole by any monetary award, and (c) AvePoint's wrongful conduct, and the resulting damage to USU is ongoing.

### COUNT 2
### Trade Dress
### (All Defendants)

37. USU repeats and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth herein.

38. USU's inherently distinctive trade dress in WAVE includes its use of: (1) three window panes for displaying the webpage (top-right), the HTML code (bottom-right), and accessibility details (left); (2) graphically descriptive icons placed inline and adjacent to webpage features to alert users to accessibility information; (3) one-to-one correspondence between icons appearing in the left pane showing accessibility details and the top-right pane showing the webpage; (4) distinctive icons for communicating accessibility-relevant information; (5) styles / no styles view; (6) filtering; (7) side-bar interaction; and (8) code view.

39. Through the public's use of the WAVE Portal for more than a decade, USU's trade dress in WAVE has acquired distinctiveness in the marketplace, and USU has acquired valuable goodwill and reputation in its trade dress.

40. AvePoint's use of trade dress that imitates USU's trade dress in WAVE has caused and is likely to cause customers and the public to be confused, mistaken, or deceived as to the source, origin, sponsorship, or affiliation of AvePoint's Infringing Products.

41. Such conduct violates Section 15 U.S.C. § 1125(a) of the Federal Lanham Act, and the common law of trade dress infringement.

42. As a result of AvePoint's conduct, USU has suffered irreparable injury, and there is immediate and imminent danger that USU will continue to suffer irreparable injury for which there is no adequate remedy at law. USU is, therefore, entitled to injunctive relief against further misappropriation of its trade dress in WAVE.

43. USU has also suffered damages as a direct result of AvePoint's infringement and is entitled to recover its actual damages in an amount to be proven at trial. Because this is an exceptional case, these damages should be trebled as allowed by 15 U.S.C. § 1117.

44. USU is also entitled to recover, pursuant to 15 U.S.C. § 1117, AvePoint's profits derived through its infringement of USU's trade dress in WAVE.

45. Because this is an exceptional case under 15 U.S.C. § 1117, USU should be awarded its attorneys' fees.

## COUNT 3
### Breach of Contract
### (All Defendants)

46. USU repeats and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth herein.

47. USU requires WAVE users to agree to its Terms of Use. AvePoint accessed the WAVE Portal and agreed to WAVE's Terms of Use. As such, AvePoint entered a valid and binding agreement to use WAVE, subject to USU conditions.

48. Pursuant to the Terms of Use, AvePoint was only authorized to use WAVE "to help [] determine the accessibility of web content," and AvePoint expressly agreed "not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble, or otherwise attempt to derive source code from WAVE."

49. AvePoint violated the Terms of Use by, among other things, developing, creating, producing, selling, transferring, and/or distributing products and services—including at least Compliance Detector and Compliance Guardian—that incorporate unauthorized copies (including reproductions and/or derivatives) of USU's WAVE. Further, on information and belief, AvePoint reverse engineered the Backend Code to obtain, by unlawful means, USU's trade secrets in its logic rules for WAVE's webpage evaluations.

50. USU performed all of its obligations under the Terms of Use.

51. USU is entitled to damages, costs, attorneys' fees, and injunctive relief as well as any other legal or equitable remedy arising from AvePoint's material breaches.

## COUNT 4
### Misappropriation of Trade Secrets
### (All Defendants)

52. USU repeats and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth herein.

53. WAVE's Backend Code, which includes the logic rules for WAVE's webpage evaluations, is not available over the Internet through the WAVE Portal and not otherwise available to the public at large without a license from USU. WAVE's Backend Code has commercial value as a result of not being publicly known, and USU takes reasonable efforts to keep the Backend Code secret and confidential. Accordingly, the Backend Code comprises USU's trade secrets.

54. AvePoint and its agents owed a duty to USU to maintain the secrecy and/or limit the use of USU's trade secrets pursuant to the Terms of Use.

55. On information and belief, AvePoint reverse engineered, without authorization, USU's Backend Code and, thereby, unlawfully acquired USU's trade secrets in the logic rules for WAVE's webpage evaluations. Subsequently, AvePoint used and/or disclosed USU's trade secrets, without authorization, in the process of developing, creating, producing, selling, transferring, and/or distributing products and services, including at least Compliance Detector and Compliance Guardian.

56. Such conduct violates the Utah Uniform Trade Secret Act, Utah Code Ann. § 13-24-1 *et seq.* ("UUTSA").

57. As a result of AvePoint's conduct, USU has suffered irreparable injury, and there is immediate and imminent danger that USU will continue to suffer irreparable injury for which

there is no adequate remedy at law. USU is, therefore, entitled to injunctive relief against further misappropriation of trade secrets.

58. USU has also suffered damages as a direct result of these misappropriations and is entitled to lost profits, unjust enrichment, and/or a reasonable royalty.

59. On information and belief, because AvePoint's conduct was willful and malicious, USU is entitled to exemplary damages and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, USU respectfully requests judgment as follows:

1. That the Court enter judgment that AvePoint infringed USU's rights in Copyright Registration No. TXu 1-915296, that AvePoint's infringement was willful, and that USU is entitled to appropriate injunctive relief, its actual damages, and profits from AvePoint's Infringing Products.

2. That the Court enter judgment that AvePoint infringed USU's trade dress in WAVE, that AvePoint's infringement was exceptional, and that USU is entitled to appropriate injunctive relief, actual damages (including lost profits), costs, attorney's fees, and exemplary damages.

3. That the Court enter judgment against AvePoint that it breached one or more of its obligations under the Terms of Use and that USU is entitled to its actual damages, costs, reasonable attorneys' fees, and injunctive relief arising from AvePoint's breaches.

4. That the Court enter judgment against AvePoint that it misappropriated USU's trade secrets, that such misappropriation was willful and malicious, and that USU is entitled to

appropriate injunctive relief, damages (including lost profits, unjust enrichment, and/or a reasonable royalty), costs, attorneys' fees, and exemplary damages.

5. That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of USU, Defendants' illegal profits obtained from their products and services—including without limitation Compliance Detector and Compliance Guardian—and requiring Defendants to provide USU a full and complete accounting of all amounts due and owing to USU as a result of Defendants' illegal activities.

6. That the Court grant to USU such other and additional relief as is just and proper.

DATED this 7th day of April, 2015.

            RAY QUINNEY & NEBEKER P.C.

            /s/Michael K. Erickson
            Michael K. Erickson

            *Attorneys for Plaintiff Utah State University*